UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **JOYCE PICARD,** an individual, <br><br> Plaintiff, <br><br> vs. <br><br> **COSTCO WHOLESALE CORPORATION,** a Washington corporation, <br><br> Defendant. | **2:20-CV-10005-TGB-APP** <br><br><br> **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

Plaintiff Joyce Picard seeks relief against Defendant Costco Wholesale Corporation for two causes of action: (1) a disability discrimination/failure to accommodate claim under the Michigan Persons with Disability Civil Rights Act (PWDCRA) and (2) a workers' compensation retaliation claim under the Michigan Worker's Disability Compensation Act (WDCA). Defendant moved for summary judgment. ECF No. 25. For the reasons explained below, Defendant's Motion for Summary Judgment is **GRANTED** and the case is **DISMISSED** with prejudice.

1

## 1.    INTRODUCTION

Costco is a foreign for-profit corporation that does business in the Township of Van Buren, County of Wayne, State of Michigan. ECF No. 8, PageID.39. Joyce Picard was hired by Costco as a Depot Clerk on June 15, 2017. ECF No. 1-1, PageID.14. The Depot Clerk role has several enumerated essential job functions listed in Costco's Job Analysis form, including, but not limited to, scheduling appointments with carriers and vendors to receive trailer loads at the depot, inspecting conditions of goods for quality, safety, and stability, and maintaining an accurate inventory report through the physical count of goods. Picard Dep., ECF No. 26, PageID.162; Job Analysis, *id.* at PageID.210-12. Costco lists sitting, standing, and walking as frequent physical demands for carrying out the essential job functions. *Id.* at PageID.210-12. Further, the role requires occasionally bending, squatting, climbing, reaching, and lifting over twenty pounds. *Id.*

On July 7, 2017, Picard slipped and fell on the depot's wax floor and injured her elbow, forcing her to miss work until September 11, 2017. Picard Dep., ECF No. 26, PageID.163. Picard filed a workers' compensation claim for this injury which Costco fulfilled without incident. *Id.* Picard returned to work without any restrictions regarding physical demands. Picard Dep., ECF No. 26, PageID.216.

On November 17, 2017, Picard injured her back while lifting heavy boxes. ECF No. 1-1, PageID.14. This injury resulted in a diagnosis of

2

scoliosis, disc herniations, and spondylolistheses at the L5-S1 level of her spine, along with physician-imposed work restrictions that limited her lifting capabilities to twenty pounds, her walking, and her ability to sit and stand at will. ECF No. 1-1, PageID.14-15; Medical Record, ECF No. 26, PageID.233. Picard filed a workers' compensation claim for this injury and received compensation until August 2018. ECF No. 1-1, PageID.14

Pursuant to Costco's Interim Community Employment Program (ICEP), Picard was sent to the Habitat for Humanity on a temporary transitional duty to perform job functions consistent with her medical restrictions for a maximum of twelve weeks. ECF No. 1-1, PageID.14; ECF No. 25, PageID.109-10. After Picard exhausted the twelve weeks on November 13, 2018, she was still unable to perform her Depot Clerk role due to the medical restrictions still in place. Picard Dep., ECF No. 26, PageID.172. As such, Picard remained on leave of absence. ECF No. 25, Page ID.110.

During this time, Costco held three job assessment meetings and both parties determined at each assessment that Picard could not resume her role as a Depot Clerk with or without accommodations given her medical restrictions. Picard Dep., ECF No. 26, PageID.183; *see also* Job Assessment, *id.* at PageID.223-32. During Picard's leave of absence, Costco sent her available job positions that she expressed interest in that were within her classification or below. *Id.* at PageID.177. Picard applied for one of these positions (photo lab assistant) internally, but she was not

3

selected for the role because she could not meet the lifting requirement. *Id.* at PageID.178-79.

On June 19, 2022, two-and-a-half years after the initial injury, Costco received Picard's latest medical restrictions which still prohibited Picard from lifting, pushing, and pulling more than twenty pounds and squatting. ECF No. 26, PageID.111. On August 11, 2020, Costco terminated Picard's employment. ECF No. 25, PageID.254. Picard found employment with the Habitat for Humanity in January 2019 as a clerk and is currently employed there. Picard Dep., ECF No. 26, PageID.173-74.

Plaintiff's complaint asserts two causes of action: (1) a disability discrimination/failure to accommodate claim under the Michigan Persons with Disability Civil Rights Act (PWDCRA) and (2) a workers' compensation retaliation claim under the Michigan Worker's Disability Compensation Act (WDCA). Defendant now moves for summary judgment pursuant to Federal Rule of Civil Procedure 56.

## 2.   LEGAL STANDARD

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact such that the movant is entitled to a judgment as a matter of law." *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013);

*see also* Fed. R. Civ. P. 56(a). A fact is material only if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

On a motion for summary judgment, the Court must view the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted); *Redding v. St. Eward*, 241 F.3d 530, 531 (6th Cir. 2001).

The moving party has the initial burden of demonstrating an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party carries this burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587. The trial court is not required to "search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). Rather, the "nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001). The Court must then determine whether the evidence presents a sufficient factual disagreement to require submission of the challenged claims to the trier of fact or whether the moving party must prevail as a matter of law. *See Anderson*, 477 U.S. at 252.

### 3.   DISCUSSION

### A. Disability Discrimination Claim under the PWDCRA

The purpose of the Michigan Persons with Disabilities Civil Rights Act (PWDCRA) is to "cover and protect only those persons whose disabilities are unrelated to their ability to do a given job. Thus, the special duties imposed on employers under the act only arise as to employees whose disabilities are unrelated to their ability to perform their jobs." *Johnson v. Lansing Dairy Co.*, 438 N.W.2d 257, 259 (Mich. App. 1988).

The PWDCRA provides that "a person shall accommodate a person with a disability for purposes of employment . . . unless the person demonstrates that the accommodation would impose an undue hardship." M.C.L. § 37.1102(2). If an employer employs a qualifying "disabled" person under the statute, it shall not "discharge or otherwise discriminate against an individual with respect to compensation or the terms, conditions, or privileges of employment, because of a disability. . . that is unrelated to the individual's ability to perform the duties of a particular job or position." *Id.* § 37.1202(1)(b).

To prove a prima facie case for discrimination under the PWDCRA, the plaintiff must "show (1) that [s]he is [disabled] as defined in the act, (2) that the [disability] is unrelated to h[er] ability to perform h[er] job duties, and (3) that [s]he has been discriminated against" due to her

disabilities. *Chmielewski v. Xermac, Inc.*, 457 N.W.2d 817, 821 (Mich. 1998); *Donahoo v. Master Data Ctr.*, 282 F. Supp. 2d 540, 548 (E.D. Mich. 2003).

Claims involving indirect evidence of discrimination, as pertinent here, follow the *McDonnell Douglas* burden-shifting framework. *Talley v. Fam. Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1105 (6th Cir. 2008); *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this framework, the plaintiff has the initial burden of establishing a prima facie case. *Talley*, 542 F.3d at 1105. If the plaintiff successfully establishes the prima facie case, the burden then shifts to the defendant to "articulate some legitimate, nondiscriminatory reason for its actions." *Id*. If the defendant meets this, the plaintiff then has the burden to show the action was a pretext for discrimination. *Id*.

### a. Picard is not disabled as defined by the PWDCRA.

As defined in the statute, a "disability" is "a determinable physical or mental characteristic of an individual" that "substantially limits 1 or more of the major life activities of that individual and is unrelated to the individual's ability to perform the duties of a particular job or position." M.C.L. § 37.1103(d)(i)(A). Michigan courts have adopted the following test in assessing a qualifying disability: "First, we consider whether . . . [there is] a physical impairment. Second, we identify the life activity upon which [the plaintiff] relies . . . and determine whether it constitutes a major life activity. Third, we ask whether the impairment substantially

7

limited the major life activity." *Donahoo*, 282 F. Supp. 2d at 548 (quoting *Bragdon v. Abbott*, 524 U.S. 624, 631 (1998)). Michigan courts define major life activities as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." *Stevens v. Inland Waters, Inc.*, 559 N.W.2d 61, 64 (Mich. App. 1996).

Here, sciatica of Picard's right side is a physical impairment, and the parties do not dispute that element. Furthermore, Picard has produced sufficient evidence, in the form of many medical records that establish her physical injuries. As to the second and third elements, Picard must identify the major life activity which is limited by her impairment.

Although she has a physical impairment, Picard fails to identify any major life activity as being substantially limited due to that impairment. Picard argues that her physical impairments do not relate to her ability to perform her essential job functions but falls short in connecting those ailments to a substantially limited major life activity outside of her employment. Further, Picard fails to show that she is substantially impaired in the major life activity of working as she indicates no broad range of jobs for which she is significantly restricted in her ability to perform.

Michigan courts follow the federal regulations for interpreting the ADA, and Michigan courts adopt these definitions in interpreting the PWDCRA. *Stevens v. Inland Waters, Inc.*, 559 N.W.2d 61, 63-64 (Mich. App. 1996). "For Plaintiff to show that she is substantially impaired in the major life activity of working, she must show that she is 'significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities.'" *Donahoo*, 282 F. Supp. 2d at 549 (citing 29 C.F.R. § 1630.2(j)(3)(i)). Whether an impairment substantially limits a major life activity is determined in light of (1) the nature and severity of the impairment, (2) its duration or expected duration, and (3) its permanent or expected permanent or long-term effect. *Stevens*, 559 N.W.2d at 64 (citing 29 C.F.R. § 1630.2(j)(2)(i)-(iii)). "The Michigan Court of Appeals has held that '[a]n impairment that interferes with an individual's ability to do a particular job, but does not significantly decrease the individual's ability to obtain satisfactory employment elsewhere, does not substantially limit the major life activity of working.'" *Donahoo*, 282 F. Supp. 2d at 549 (citing *Stevens*, 559 N.W.2d at 64).

Picard's most recent medical report listed a diagnosis of sciatica on her right side and imposed kneeling and squatting restrictions. ECF No. 26, PageID.233. These medical restrictions impact Picard's ability to perform simple manual tasks that could arguably constitute major life

9

activities. Yet, Plaintiff fails to allege any major life activity that has been substantially limited by her physical impairments. Even if a major life activity of Picard's is impaired, Defendant argues that Picard's disability relates to her ability to perform her duties as a Depot Clerk and as such, she is not "disabled" as defined by the PWDCRA. ECF No. 28, PageID.403.

### b. Even if Picard is disabled, her disability is related to her ability to perform her job duties, which is not protected under the PWDCRA.

Under Michigan law, "the only [disabilities] covered by the act, for purposes of employment, are those unrelated to ability to perform the duties of the position." *Carr v. Gen. Motors Corp.*, 389 N.W.2d 686, 689 (Mich. 1986), *amended on reh'g in part*, 393 N.W.2d 873 (Mich. 1986). "A disability that is related to one's ability to perform the duties of a particular position is not a 'handicap' within the meaning of the act." *Rymar v. Mich. Bell Tel. Co.*, 476 N.W.2d 451, 452 (Mich. App. 1991). A disability is unrelated to the individual's job performance when, "with or without accommodation, an individual's disability does not prevent the individual from performing the duties of a particular job or position." M.C.L. § 37.1103(l)(i). A disability is unrelated to the employee's capacity to perform her job if she can successfully carry out her job functions with or without accommodation from the employer. *Id*. Further, an individual qualifies as "disabled" under the statute when she possesses "the requisite skill, experience, education, or other work-related requirements

10

of the job and [] can perform its essential functions with or without reasonable accommodation." *Collins v. Blue Cross Blue Shield of Mich.*, 579 N.W.2d 435, 439 (Mich. App. 1998). The issue of whether one's disability is "unrelated to the individual's ability to do the job [is] not to be determined solely by reference to the employer's definition of the job or the qualifications for the job," as the employer may construe its job description in a way that inherently disqualify those with disabilities. *Adkerson v. MK-Ferguson Co.*, 477 N.W.2d 465, 470 (Mich. App. 1991). The analysis must also be "determined with reference to the job actually held" and not one sought after. *Rourk v. Oakwood Hosp. Corp.*, 580 N.W.2d 397, 401 (Mich. 1998).

In *Carr*, the plaintiff worked for General Motors as a specialized clerk. 389 N.W.2d at 687. The plaintiff underwent back surgery for a ruptured disc and received medical restrictions prohibiting him from lifting more than fifty pounds. *Id.* The plaintiff was moved to a different position due to a workforce reduction, and a few years later, he requested a transfer to a new role in the dimensions group. *Id.* Because this new role required routine lifting in excess of fifty pounds, General Motors denied the request, and the plaintiff brought a claim under the PWDCRA. *Id.* The court reasoned that the plaintiff did not qualify as disabled under the statute, as he "admitted that his handicap is related to his ability to perform the duties of the position in the dimensions group into which he was denied transfer." *Id.* at 690.

11

Similarly, Picard's disability is related to her ability to perform the duties of her position as Depot Clerk. Picard allegedly suffers from scoliosis, disc herniations, and spondylolistheses at the L5-S1 level of her spine, which are related to her job functions at Costco's Van Buren warehouse as a Depot Clerk. ECF No. 1-1, PageID.15. Picard received medical restrictions prohibiting lifting in excess of twenty pounds, as well as limiting her walking and the ability to sit and stand at will. *Id.* at PageID.14. Costco identifies sitting, standing, and walking as essential job functions of a Depot Clerk, and Picard echoed these duties in her deposition. Job Analysis, ECF. No. 26, PageID.210-12; Picard Dep., *id.* at PageID.162. Further, the role requires occasionally bending, squatting, climbing, reaching, and lifting over twenty pounds. *Id.* at PageID.210-12. Picard acknowledged that her job duty as a Depot Clerk requires routine bending, lifting, and squatting, which are all in violation of her physician-imposed medical restrictions. *Id.* at PageID.162. Accordingly, as in *Carr*, where the court found that the plaintiff's disabilities were not covered by the Act because they were related to the job requirements of the position to which the plaintiff sought to transfer, Picard's disabilities are related to her job duties as a Depot Clerk.

Given the essential nature of these activities in performing her job functions and their relation to her disability, Picard cannot bring a claim for relief under the PWDCRA. Picard's disability is directly related to her ability to perform her essential job functions as a Depot Clerk. There is

12

no genuine dispute of material fact regarding whether Picard's disabilities relate directly to the essential functions of her role as a Depot Clerk. As such, Picard is not "disabled" as defined by the PWDCRA, and she is unable to bring a disability discrimination claim against Costco under these circumstances. Given that Picard cannot establish the first two elements of her claim, the Court need not address evidence of discriminatory conduct.

### B. Failure to Accommodate Under the PWDCRA

To prove a prima facie case under the PWDCRA for a failure to accommodate claim, the plaintiff must show that "(1) she is disabled within the meaning of the Act; (2) she is otherwise qualified for the position, with or without reasonable accommodation; (3) her employer knew or had reason to know about her disability; (4) she requested an accommodation; and (5) the employer failed to provide the necessary accommodation." *Johnson v. Cleveland City Sch. Dist.*, 443 Fed. Appx. 974, 982-83 (6th Cir. 2011). If the plaintiff establishes a prima facie case, "the burden shifts to the employer to demonstrate that any particular accommodation would impose an undue hardship on the employer." *Id.* at 983.

A failure to accommodate claim shares the first two elements with a disability discrimination claim under the PWDCRA. As such, a similar analysis applies. The plaintiff must be "disabled" within the meaning of the statute, that is, the disability must be "unrelated to the individual's

13

ability to perform the duties of a particular job or position." M.C.L. § 37.1103(d)(i)(A). Here, as discussed above, Picard's disability is related to her ability to perform the duties of the position. Because Picard is not "disabled" within the reach of the statute, the Court need not determine whether Costco failed to make a reasonable accommodation. However, even if Picard had established a qualifying disability under the PWDCRA, Picard still would not be able to prevail on her failure to accommodate claim.

### a. Picard could not complete her job with, or without, reasonable accommodations.

Under the PWDCRA, reasonable accommodations must be made for qualifying employees under the statute. The PWDCRA specifically identifies the following accommodations as reasonable: "(1) purchasing equipment and devices, (2) reasonable routine maintenance or repair of such equipment and devices, (3) hiring readers and interpreters, and (4) restructuring jobs and altering schedules for minor and infrequent duties." M.C.L. § 37.1210(2)-(5), (7)-(11), (14)-(15). Although this is not an exhaustive list, it serves as guidance on the "scope of accommodation." *Rourk*, 580 N.W.2d at 401.

"[J]ob restructuring and altering the schedule of employees under this article applies only to minor or infrequent duties relating to the particular job held by the person with a disability." M.C.L. § 37.1210(15). In evaluating accommodations that ought to be made, "the disputed

14

issues will be whether such accommodation is reasonable, whether such accommodation would impose an undue hardship upon the employer, and/or whether the plaintiff is capable of performing the job even with the suggested accommodation." *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1183 (6th Cir. 1996), *abrogated on other grounds by Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312 (6th Cir. 2012).

Here, Picard argues that she could perform her essential job functions with simple accommodations such as team lifting. Picard argues that this accommodation will allow her to perform her tasks as a Depot Clerk, thus making her "disabled" within the statute. ECF No. 27, PageID.259. In response, Defendant points out that Picard's most recent medical records (as of June 19, 2020), state that she cannot lift any more than twenty pounds and has substantial restrictions on her ability to squat and kneel. ECF No. 26, PageID.233. As of the date of oral argument on July 12, 2022, Plaintiff's counsel confirmed that these restrictions remain in place. Although Picard also argues that team lifting accommodations have been provided in the past, here they would be futile because her limitations would still prevent her from lifting any more than 20 pounds and from squatting or kneeling. ECF No. 27, PageID.258. Picard's suggested accommodation of team lifting would still render her incapable of performing her essential job functions. Therefore, she would still not be considered "disabled" under the PWDCRA with such an accommodation. The first suggested accommodation of team lifting is

thus an inadequate accommodation that would still render her incapable of performing her essential job functions.

Second, Picard argues that Costco should accommodate her through a transfer to a front office work position consisting of less physical tasks, including paperwork and filing, because these duties also fall under the Depot Clerk position. ECF No. 27, PageID.259. According to Picard, although lifting in excess of twenty pounds, bending, and squatting all flow from the performance of her essential tasks, ECF No. 26, PageID.162, not every Depot Clerk performs the same essential functions that are listed on Costco's job analysis form. Picard Dep., *Id*. at PageID.176. For example, Picard alleges that some Depot Clerks in different departments have minimal lifting requirements. *Id*. at PageID.163. As such, Picard asserts there is a genuine issue of material fact as to whether the listed essential functions are actually imposed upon *every* Depot Clerk.

However, "the duty of an employer to accommodate handicapped employees under the [PWDCRA] is limited to (1) the alteration of physical structures to allow access to the place of employment and (2) the modification of peripheral duties to allow job performance." *Ashworth v. Jefferson Screw Prod., Inc.*, 440 N.W.2d 101, 104 (1989). Given this, "the duty to accommodate imposed under the [PWDCRA] does not extend to new job placement or vocational rehabilitation efforts." *Id.* An employer's duty to accommodate is limited: "an employer has no duty to

16

accommodate the plaintiff by recreating the position, adjusting or modifying job duties otherwise required by the job description, or placing the plaintiff in another position." *Kerns v. Dura Mech. Components, Inc.*, 618 N.W.2d 56, 64 (Mich. App. 2000).

In *Kerns*, the plaintiff sought an accommodation to relocate positions within the defendant's company, as he was unable to perform his current job as an industrial relations manager due to disabilities that restricted his movement. *Id.* at 63. Specifically, the plaintiff suffered from arthritis, carpal tunnel, cervical radiculopathy, and bilateral ankylosis of the shoulders, conditions that prohibited him from standing and walking for long periods. *Id.* The court held that the defendant "was not required to accommodate plaintiff in the manner he has suggested," as the proposed relocation extended beyond a reasonable accommodation. *Id.* Further, the court held that "an employer's duty to make 'reasonable accommodation' under the [PWDCRA] does not extend to granting the plaintiff a medical leave until such time as he would be able to perform the requirements of his job." *Id.* at 64. The court, affirming the defendant's motion for summary judgment, stated that this accommodation is unreasonable on its face, and the plaintiff is not disabled within the Act as he is unable to show that he "could nonetheless 'perform the essential functions' of [his] job, with or without 'reasonable accommodation.'" *Id.* at 64 (quoting *Cleveland v. Pol'y Mgmt. Sys. Corp.*, 526 U.S. 795, 807 (1999)).

17

Although Picard's counsel referenced *Johnson v. City of Pontiac* at oral argument held on July 12, 2022, as precedent that a positional transfer is a reasonable accommodation, the Court finds the case inapposite to the present matter. 2007 WL 1013247, *6 (E.D. Mich. Mar. 30, 2007). In *Johnson*, the court found there to be a genuine dispute of material fact regarding the existence of a "consistent policy within the City of Pontiac Police Department that, regardless of position or rank, each officer must be able to perform the basic duties of a Patrol Officer." *Id.* at *6. The plaintiff was promoted from a Patrol Officer to a Detective Sergeant before severely fracturing his left leg and ankle while making an arrest. *Id.* at *1. After his injury, the plaintiff "returned to work with physician-prescribed limitations, including no running, sudden movement or contact with prisoners." *Id.* The plaintiff was then contractually obligated to apply for disability retirement as he was unable to perform the essential functions of his Detective Sergeant role. *Id.* The court, in denying the motion for summary judgment, held that there was a factual dispute as to whether "running and making sudden movements are within the essential duties required of every Pontiac police officer." *Id.* at *5.

Unlike *Johnson*, where there was a genuine dispute of material fact regarding the essential functions of every police officer in the department, Costco has a job analysis form for the Depot Clerk position

18

that lists the essential functions and the physical demands it entails. ECF No. 26, PageID.212.

More importantly, even if a jury were to find it a reasonable accommodation to transfer Picard to a new role within the company that could accommodate her medical restrictions, or that Picard's job requirements were not essential functions of *every* Depot Clerk, there is no evidence that an alternative position was available. In accordance with its Employee Agreement, Costco worked with Picard to identify other suitable positions once it determined Picard could not continue to perform her essential job functions without reasonable accommodations. ECF No. 27-2, PageID.272.

Costco performed three separate job assessment meetings to evaluate Picard's ability to perform her role and to inform her of other potential openings at her depots of choice. One job assessment meeting form stated that "alternative positions were not assessed since the depot currently has no open or posted positions to review at this time." ECF No. 26, PageID.224. Picard herself stated that she was unaware of a potential position available that would accommodate her medical restrictions. Picard Dep., ECF No. 26, PageID.177. In fact, Picard testified that Costco provided her with other available positions at depots of Picard's choosing, consistent with its written policy, but her medical restrictions disqualified her for the positions. *Id.* at PageID.178-79 (Picard applied for a photo lab assistant position but the job requirements called for the

19

ability to lift 21 to 50 pounds). Thus, even if a positional transfer with the company was found to be a reasonable accommodation, Picard failed to provide any evidence that a position was available that would accommodate her medical restrictions.

Furthermore, Costco accommodated Picard for twelve weeks in their Interim Community Employment Program (ICEP), also referred to as Temporary Transitional Duty (TTD). Picard Dep., ECF No. 26, PageID.171; ECF No. 25, PageID.109-10. This TTD took place from August 9, 2018, and was exhausted on November 13, 2018. *Id.* While the TTD program is not Costco's official accommodation policy, it still supplied Picard with a job earning twelve weeks of pay. ECF No. 28, PageID.408; Picard Dep., ECF No. 26, PageID.171. Members of Costco's management team, David Hunnewell (Depot Manager) and Linda Smith (Integrated Leave and Accommodations Specialist), both reiterated that Costco's TTD policy imposed the twelve-week limitation, separate from Costco's obligations under its own ADA policy. Hunnewell Dep., ECF No. 27-3, PageID.282; Smith Dep., ECF No. 27-11, PageID.366.

Costco is only required to restructure job obligations for minor and infrequent duties. As the Depot Clerk role requires physical labor for multiple hours per day, any proposed accommodation must not be a major change. Given Picard's restrictive medical directions, there is no reasonable alteration Costco could make to the Depot Clerk role that would enable Picard to perform all essential job functions. The role is

20

physical in its nature, and this inherent burden extends far beyond
Picard's current capacity to perform physical tasks.

## C. Workers' Compensation Retaliation Claim

The Michigan Workers' Disability Compensation Act (WDCA)
reads, in pertinent part, that:

> A person shall not discharge an employee or in any manner
> discriminate against an employee because the employee filed a
> complaint or instituted or caused to be instituted a proceeding
> under this act or because of the exercise by the employee on behalf
> of himself or herself or others of a right afforded by this act.

M.C.L. § 418.301(13). To prove a prima facie case under this statute, the
plaintiff must show that "(1) he asserted his right to workers'
compensation benefits; (2) the Defendants knew that Plaintiff asserted
his right to workers' compensation benefits; (3) the Defendant terminated
Plaintiff; and (4) there was a causal connection between Plaintiff's
assertion of his right to workers' compensation benefits and his
termination." *Chisolm v. Mich. AFSCME Council 25*, 218 F. Supp. 2d
855, 873-74 (E.D. Mich. 2002); *see also Dortman v. ACO Hardware, Inc.*,
405 F. Supp. 2d 812, 822 (E.D. Mich. 2005); *Chiles v. Mach. Shop, Inc.*,
606 N.W.2d 398, 404 (Mich. App. 1999).

Here, Picard has established the first three elements to make a
prima facie claim: (1) On November 21, 2017, she filed a workers'
compensation claim (Exh. 8, ECF No. 26, PageID.217-18); (2) Costco
knew that she filed such a claim (*id.*); (3) Costco terminated her on

August 11, 2020 (Exh. 34, ECF No. 26, PageID.234-35). The only remaining question is whether she can establish a causal connection.

The causation element of a retaliation claim is "usually difficult to prove." *Cuddington v. United Health Servs., Inc.*, 826 N.W.2d 519, 525 (Mich. App. 2012). It is well-settled that "something more than a mere temporal connection is required to establish a causal connection between the filing of a workers' comp claim and an adverse employment action." *Dortman*, 405 F. Supp. 2d at 824. There needs to be circumstantial evidence offered that leads to an "inference that an employer's decision to take an adverse employment action was at least in part retaliatory." *Cuddington*, 826 N.W.2d at 525.

First, Picard suffered an on-the-job injury on November 17, 2017. ECF No. 1-1, PageID.14. She then filed her workers' compensation claim on November 21, 2017. ECF No. 26, PageID.217. Subsequently, Costco terminated her on August 11, 2020. ECF No. 26, PageID.1234. More than two years passed between the time of filing the claim and the adverse action. As in *Dortman*, where eight months was insufficient to establish a temporal connection between the filing of a workers' compensation claim and the adverse action, the timeframe here is certainly insufficient to establish a causal link.

Second, Picard points to two comments made by Costco employees which she argues indicate hostility towards her filing a workers' compensation claim. She alleges that her supervisor, Michelle Roe,

instructed Picard not to report her injury on November 17, 2017, as evidence that Costco exhibited hostility towards Picard seeking compensation for her injury. ECF No. 27, PageID.265. Picard claims she feared that reporting her work injury would alert Costco to the filing of her workers' compensation claim, resulting in Costco taking adverse employment action against her.

In response, Costco argues that Roe is a fellow Depot Clerk with no administrative input as to any proposed accommodations regarding Picard. ECF No. 28, PageID.406. A comment made by a non-decision-maker several months before any alleged adverse action is insufficient to establish a causal link. Picard has not alleged that Roe has "any involvement whatsoever in the accommodation process or in any of Costco's decisions regarding Picard." *Id.* Even in a light most favorable to Picard, Roe's alleged instruction to refrain from reporting her injury is not sufficient to demonstrate a causal link that Costco failed to accommodate Picard or terminated her employment because of her filing a workers' compensation claim.

Picard also alleges that administrative manager Catrice Cota's statement, "I know you were a great employee, but they are very strict about allowing restrictions on the warehouse floor," *id.* at PageID.251, demonstrates a causal link between the filing of Picard's workers' compensation claim and Costco's adverse employment action. ECF No. 27, PageID.265. The alleged statement caused Picard to believe she was

23

"a liability, specifically because of her work-related injury." *Id.* at PageID.265-66.

While Picard's feelings are valid, a plaintiff's subjective feelings about a statement are not enough to establish a causal connection. These alleged comments are insufficient to demonstrate that Costco terminated Picard's employment because of her filing of the workers' compensation claim.

Third, Picard argues that Costco did not suggest the possible accommodations of team lifting or the relocation to a front office role. As stated above in the analysis of the failure to accommodate claim, team lifting was a futile accommodation as Picard would still be unable to perform the essential job functions of the role given her medical restrictions. Further, Costco is not required by law to relocate Picard to a different position that complied with her medical restrictions as a form of accommodation. And lastly, there is no evidence in the record showing that Costco had any available positions for which Picard was interested and qualified.

The facts in the present case are very similar to those in *Dortman*. In *Dortman*, the court held that the plaintiff did not "make . . . a showing through offers of speculation and conjecture" when attempting to demonstrate a causal connection between the filing of a workers' compensation claim and the employer's adverse action. 405 F. Supp. 2d

at 824. The plaintiff worked for ACO Hardware, Inc. as a department manager when she suffered an on-the-job contusion of her right arm. *Id.* at 816. The plaintiff filed a workers' compensation claim, which ACO did not dispute, and took roughly a month of leave. *Id.* After returning to her job, the plaintiff needed surgery requiring another extensive leave which would exhaust her allowable leave time under the FMLA. *Id.* Eight months after the initial workers' compensation claim was filed, the plaintiff was terminated. *Id.* at 824. The court reasoned that "the substantial length of time that passed between Plaintiff's filing of her workers' comp claim and her termination mitigate against a finding of causation." *Id.*; *see also Hafford v. Seidner*, 183 F.3d 506, 515 (6th Cir. 1999) (adverse employment action taken five months after filing a workers' compensation claim was insufficient to support a finding of retaliation).

For the same reason, Picard is unable to demonstrate a causal connection between the filing of her workers' compensation claim and the adverse employment actions taken by Costco. The prima facie case has not been proven, and Costco is entitled to summary judgment.

## A. Picard's Showing of Pretext

Even if Picard were able to prove a prima facie case for retaliation under the WDCA, she must rebut Costco's showing of a legitimate business reason for its actions by demonstrating that Costco's actions

were a mere pretext for discrimination. To prove a sufficient case of pretext, the plaintiff must show that the employer's offered reasons for its adverse employment actions "(1) had no basis in fact, (2) were not the actual factors motivating the decision, or (3) were insufficient to justify the decision." *Cuddington*, 826 N.W.2d at 526; *see MacDonald-Bass v. J.E. Johnson Contracting, Inc.*, 493 Fed. Appx. 718, 725 (6th Cir. 2012). Yet, "[t]he soundness of an employer's business judgment, however, may not be questioned as a means of showing pretext." *Dubey v. Stroh Brewery Co.*, 462 N.W.2d 758, 760 (Mich. App. 1990).

In *MacDonald-Bass*, the Sixth Circuit held that a legitimate business reason existed where the employer "had an honest belief that MacDonald-Bass had difficulties on the job, particularly the demanding physical requirements." 493 Fed. Appx. at 725. The plaintiff, a pipefitter at J.E. Johnson Contracting, experienced multiple physical injuries during her employment. *Id.* at 721. As a result of these injuries, "the doctor imposed restrictions of no lifting, pushing, or pulling greater than five pounds." *Id.* at 722. The Court reasoned that "MacDonald-Bass's performance issues are substantially interrelated with her physical abilities," and the termination based on these physical shortcomings was a qualified legitimate business reason. *Id.* at 726. The plaintiff failed to show pretext as she did not "raise a material factual dispute about whether Johnson honestly, reasonably believed she could not physically perform the duties of a pipefitter." *Id.* at 727.

26

In the instant case, Costco's alleged legitimate business reason is "that Costco could not accommodate her in her Depot Clerk position given the extensive medical restrictions associated with her disabilities." ECF No. 25, PageID.122-23. Thus, Costco had the reasonable belief that Picard could not be accommodated to perform her Depot Clerk role due to her physical shortcomings. Costco argues that it made efforts to accommodate Picard by "providing Picard with an extended leave of absence, a temporary transitional duty assignment, three separate job assessment meetings, and weekly communications about available positions at the depot and the warehouses she selected." *Id.* at PageID.123. Picard bears the burden to raise a material factual dispute over Costco's reasonable belief. Picard argues that Costco's claimed legitimate business reason "was not the actual factor motivating the decision and was insufficient to justify the decision." ECF No. 27, PageID.266.

Picard first argues that a pretext for discrimination exists here because the claimed business reason was not the actual factor motivating Costco's adverse employment actions. Picard claims that the conversation she had with Cota is evidence of Costco's hostility towards Picard's on-the-job injury. *Id.* at PageID.266-67. Again, the statement made by Cota was that "Costco was very strict about allowing restrictions on the warehouse floor." *Id.* at PageID.267. Yet, for the same reasons

27

above, this alleged hostility cannot be proven by a mere expression from a non-decision maker that Costco follows strict guidelines.

Moreover, Picard claims that another motivating factor in not accommodating Picard was "[Costco's] actual policy of not accommodating anyone with an injury beyond 12 weeks at the depot where Plaintiff worked." ECF No. 27, PageID.245. This argument erroneously conflates Costco's TTD (ICEP) policy with its accommodation policy pursuant to the ADA. Via the Employee Agreement, Costco keeps these two policies separate. ECF No. 29, PageID.489. Costco's TTD policy states that "[i]f you are assigned to transitional duty in a position in a lower pay classification, you continue to receive your normal rate of pay while on transitional duty for a maximum of 12 weeks." *Id.* This policy is separate from its ADA policy, which is also covered in the Employee Agreement. *Id.* at PageID.480. Costco has no such policy of limiting accommodations to a maximum of twelve weeks, rather it limits the length of a transitional duty to that timeframe.

Picard's second argument is that Costco's stated legitimate business reason for its adverse employment actions is insufficient to justify its refusal to accommodate and Picard's termination. ECF No. 27, PageID.267. Picard argues that her supervisor, Paul Vanhartesveldt, is aware of team lifting accommodations which have previously been used to accommodate employees with restrictions. *Id.* Picard also claims that she could perform front office work with her medical restrictions but was

not accommodated by Costco. Yet, Picard offers no evidence to support that the team lifting accommodation would enable her to perform the Depot Clerk duties. She still had medical restrictions that even team lifting would not accommodate. Further, Costco sent Picard other job opportunities at the depots of her choice that complied with her medical restrictions. ECF No. 28, PageID.110-11.

Picard failed to establish that Costco's adverse employment actions were a pretext for discrimination. Costco presented a legitimate business reason, and Picard failed to rebut that claim. Thus, Costco is entitled to Summary Judgment.

### 4.    CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is **GRANTED** and this case is **DISMISSED** with prejudice.

**IT IS SO ORDERED.**

Dated:    September    9,    s/Terrence G. Berg
2022                                TERRENCE G. BERG
                                         UNITED STATES DISTRICT JUDGE